# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

EMILIANO D. SANCHEZ,

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.

CASE NO. 2:08-CV-424
CRIM. NO. 2:03-CR-084
JUDGE SARGUS
MAGISTRATE JUDGE KING

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings this motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. This matter is before the Court on the motion, respondent's return of writ, petitioner's "motion for mitigating factors," and the exhibits of the parties. For the reasons that follow, it is **RECOMMENDED** that petitioner's *Motion for Mitigating Factors*, Doc. No. 173, be **DENIED** and that this action be **DISMISSED.**

## PROCEDURAL HISTORY

Petitioner was convicted on a charge of conspiracy to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §846 as a result of his June 7, 2007, negotiated guilty plea. *See* Doc. Nos. 154, 156. On December 13, 2007, petitioner was sentenced to 100 months imprisonment plus five years supervised release. Doc. Nos. 164, 165.

On May 2, 2008, petitioner filed this *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. He asserts as follows:

> 1. Conviction obtain[ed] by plea of guilty which was unlawfully induced or not made voluntarily or with

understanding of the nature of the charge and consequences of the plea.

My attorney told me that I was not going to receive no more th[an] 70 months or five years, 10 months...

2. Conviction obtained by use of evidence obtain[ed] pursuant to an unlawful[] arrest.

3. Conviction obtained by a violation of the privilege against self-incrimination.

4. Denial of effective assistance of counsel.

It is the position of the respondent that petitioner's claims are without merit.

## MERITS

In claim one, petitioner asserts that his guilty plea was not knowing, intelligent and voluntary because he did not understand the nature of the charge against him or the consequences of his guilty plea and because his attorney assured him a sentence of no more than 70 months. In claim two, petitioner asserts that his conviction was obtained by use of evidence seized pursuant to an unlawful arrest.[1] In claim three, petitioner asserts that his conviction was obtained in violation of his privilege against self incrimination.[2] In claim four, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to assist him with this case. Because all these claims are related, they

---

[1] Petitioner does not indicate the nature of the alleged illegal evidence. However, petitioner complains that he was released by police on this charge in 2003 but was thereafter arrested in 2007 pursuant to an arrest warrant. *See Petition;* Doc. No. 144.

[2] Petitioner argues in support of this claim that he is actually innocent of the charge. *See Petition*.

will be considered together here.

A prisoner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), applies to a challenge to a guilty plea based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir.1988). In order to obtain relief, a prisoner who is challenging the entry of his guilty plea on the basis of counsel ineffectiveness must first show that counsel's advice did not fall within the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 59; *Sparks*, 852 F.2d at 884. The second, or "prejudice," requirement on the other hand focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill,* 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

Additionally, because a criminal defendant waives numerous constitutional rights when he enters a plea of guilty, the plea must be entered into knowingly and voluntarily in order to be constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). " 'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Sparks*, 852 F.2d at 885 (quoting *North Carolina v Alford*, 400 U.S. 25, 31 (1970)). In applying this standard, a court

must look at the totality of circumstances surrounding the plea. *Id*. A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan,* 426 U.S. 637, 648 (1976).

Where a prisoner challenges his guilty plea on the basis that it was induced by an unkept promise, a court must determine whether the allegation, when viewed against the record of the plea hearing, is so palpably incredible, so patently frivolous or false, as to warrant a summary dismissal. *Blackledge v. Allison*, 431 U.S. 63, 76 (1977). In applying this standard, a court must indulge a strong presumption that statements made by the parties at the plea hearing were truthful. *Id.* at 74.

Here, petitioner signed a plea agreement indicating that he understood that he faced a mandatory minimum sentence of ten years in prison, and a possible maximum term of life. In return for petitioner's guilty plea, the government agreed to dismiss Count 2 of the Indictment, and agreed not to file any additional criminal charges based on the activities involved in the Indictment. The parties agreed that petitioner's relevant conduct under the United States Sentencing Guidelines involved more than 15 kilograms but less that 50 kilograms of cocaine, resulting in an offense level of 34. Petitioner indicated that he understood that this agreement was not binding on the Court. Petitioner would also obtain a three level reduction in his recommended sentence under the United States Sentencing Guidelines for his acceptance of responsibility. He agreed to forfeit the three vehicles listed in Count 3 of the Indictment, and agreed that those vehicles were used to carry out his conspiracy to distribute cocaine. Petitioner indicated that he was "aware that any estimate

of the probable advisory sentencing range under the United States Sentencing Guidelines"was "a prediction, not a promise, and is not binding." *Plea Agreement*, Doc. No. 154. His plea agreement also stated:

> The United States makes no promise or representation concerning what sentence the defendant will receive and the defendant cannot withdraw the guilty plea based upon the actual sentence imposed.

*Id.* The government further agreed that, if petitioner provided substantial assistance, it might move for a downward departure from the sentencing guidelines under 18 U.S.C. §3553(e) or §5K1.1. *Id.*

At the time of petitioner's guilty plea, he indicated that he had discussed with his attorney any possible defenses to the charges. *Guilty Plea Transcript*, at 4. He told his attorney everything he knew about the case and believed that his attorney had full knowledge regarding the facts and circumstances of the charges. *Id.*, at 5. Defense counsel had advised petitioner of any defenses he may have and petitioner was "clearly" satisfied with counsel's advice and representation. *Id.* Petitioner had also discussed with counsel how the sentencing guidelines might apply. *Id.*, at 7. The Court advised petitioner of the elements of the offense charged and the potential penalties that he faced, including the fact that the Court would be required to impose a sentence of at least ten years imprisonment. *Id.*, at 5-7. Petitioner understood that the Court could impose a sentence greater or less than that called for by the sentencing guidelines. *Id.*, at 8. The Court advised petitioner of all the rights that he was waived by virtue of his guilty plea. Petitioner at all times indicated that he understood. *Id.*, at 8-9.

> COURT: Do you understand if I accept your plea of guilty, I could impose the same penalties as though you pleaded not guilty, stood trial and were convicted by a jury in this courtroom?
>
> DEFENDANT: Yes, sir.

*Id.*, at 9. The prosecutor summarized the terms of petitioner's guilty plea agreement. Petitioner agreed with those terms. *Id.*, at 9-11. He denied being made any other promises to induce his guilty plea. *Id.*, at 11-12. He denied being under the influence of drugs or alcohol, *id.*, at 4-5, or being threatened into pleading guilty. *Id.*, at 12. Agent Michael Reeb summarized the facts of the case as follows:

> On April 16, 2003, a cooperating source advised investigating agents that Juan Ferreira, known to the source as Frank, had received a shipment of cocaine from Colorado and wanted to deliver the shipment to the source. Ferreira advised the source that he had between 10 and 20 kilograms of cocaine. A recorded call was placed to Ferreira to confirm he did in fact have the cocaine. In that call Ferreira negotiated the price of the cocaine with the source. Ferreira indicated that he had 20 for 20, meaning 20 kilograms for $20,000 per kilogram.
>
> A meeting was arranged for April 17, 2003. Prior to that meeting, agents confirmed that a gold Lincoln Continental with a Colorado registration was parked near the residence of Ferreira at 2233 Gable Lakes Drive in Hilliard, Ohio.
>
> The source and Ferreira met at the Bob Evans restaurant at Polaris Mall around 1:00 p.m. Ferreira drove a blue Nissan Quest mini van [to] the meeting. At the meeting Ferreira confirmed that he had the cocaine, but he had to take the mini van to pick it up. Ferreira indicated that he had a hidden compartment in the mini van, and he would call the CS when the cocaine had been loaded and was ready for delivery.
>
> Surveillance units followed Ferreira as he drove the van back in his residence in Hilliard. Once he arrived, agents observed

Ferreira and two males, one of whom was identified as Manuel Vatrez, go into garage no. 4, an unattached garage associated with Ferreira's residence. After they left the garage, an individual, later identified as William Shanks, drove a red Ford Taurus out of garage no. 4. The source had previously advised agents that Ferreira used a garage near his residence to store cocaine. The source also advised Ferreira had used a red Ford Taurus, with a hidden compart6ment, in the past to transport cocaine from Colorado to Ohio.

Once the Taurus left the garage, the Quest mini van was driven in the same garage. Manuel Vatrez and Juan Ferreira were observed by aerial surveillance going into the garage with the Quest mini van. Shortly thereafter, the mini van was observed exiting the garage and returning to the area of the Bob Evans restaurant near the Polaris shopping center. Ferreira drove the van. He also called the CS and indicated that he was ready to meet. The source met with Ferreira at a gas station, and arrangements were made for them to drive across the street to a parking lot where Ferreira would show the source how to open the hidden compartment in the van. In that parking lot, as Ferreira was in the process of opening the compartment, he was arrested.

A subsequent search of the van revealed 20 individual bundles of cocaine in that hidden compartment. The DEA laboratory found the packages contained 17.88 kilograms of cocaine.

A search warrant was executed on the garage at Ferreira's residence. Two more bundles of cocaine were found in the garage. The DEA laboratory found these bundles to contain 2,003 grams of cocaine.

A red Taurus, observed earlier at Ferreira's residence, was stopped approximately ten minutes after Ferreira was arrested. The vehicle was driven by Jesus Ortiz who had been observed on surveillance acting as a lookout outside of Ferreira's residence. William Shanks and Emiliano Sanchez were also found in the vehicle. A search of the vehicle demonstrated it contained a hidden compartment. The vehicle was registered in the name of Ortiz's wife, Nidia. Nidia Ortiz is the daughter of the defendant, Emiliano Sanchez.

> The gold Lincoln Continental with Colorado tags, registered in the name of Emiliano Sanchez, was also seized pursuant to a search and seizure warrant. It, too, contained a hidden compartment. Manuel Vatrez was subsequently arrested at a residence of Ferreira.
>
> Based upon the evidence that the agents had at the time of the traffic stop, Ortiz, Ferreira, Vatrez and Shanks were arrested. Sanchez and his daughter were permitted to leave.
>
> Investigating agents subsequently learned from the cooperating defendants that Jesus Ortiz had been recruited by his father-in-law, Emiliano Sanchez, to transport cocaine to Columbus from Colorado for Vatrez. The cocaine was delivered to Ferreira. Ortiz and his wife used the red Taurus, registered in his wife's name, to transport the cocaine to Columbus. Vatrez, Shanks and Sanchez followed them to Columbus from Colorado in the Lincoln, registered to Sanchez, to oversee the delivery of the cocaine. Shanks's job was to transport the moneys obtained from the sale of the cocaine back to Colorado following the transaction with the source.
>
> Cooperating witnesses confirmed that Emiliano Sanchez assisted VATrez and Ferreira in Ferreira's garage to unload the cocaine from the Taurus and transfer it to the hidden compartment in the Nissan Quest van. The fingerprints of Sanchez and Vatrez were found on the kilograms of cocaine seized from the garage and the Nissan van.

*Id.*, at 13-16. Petitioner agreed with this statement of facts, *id.*, at 16, except that he denied hiring his son-in-law to the conspiracy. *Id.*, at 17-18. Petitioner's recommended sentence under the United States Sentencing Guidelines was 87 to 108 months incarceration. *Sentencing Transcript*, at 20. The Court imposed 100 months, even though petitioner was subject to a mandatory minimum term of 120 months, after concluding that petitioner qualified for a reduction under 18 U.S.C. §3553(f)(1) - (5). *Id.*, at 15-16.

Petitioner now claims that he is innocent of the charge upon which he stands

convicted and that his attorney promised him a sentence of no more than 70 months. These claims are unworthy of credit in view of the record before this Court. Petitioner admitted his guilt and repeatedly acknowledged his understanding of the sentencing ramifications. He denied any promises to him aside from those set forth in his plea agreement.

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.

*Blackledge v. Allison, supra*, 431 U.S. at 73-74. Further, any inaccurate prediction by defense counsel regarding petitioner's recommended sentence would not constitute the effective assistance of counsel under *Strickland*, nor render petitioner's guilty plea invalid.

> It has long been settled as a general rule that where an adequate guilty plea hearing has been conducted, an erroneous prediction or assurance by defense counsel regarding the likely sentence does not constitute grounds for invalidating a guilty plea on grounds of ineffective assistance of counsel. *See Masciola v. United States,* 469 F.2d 1057, 1059 (3d Cir. 1972) (citing *Wellnitz v. Page*, 420 F.2d 935 (10th Cir. 1970)); *see also United States v. Marzgliano*, 588 F.2d 395, 399 n. 6 (3d Cir. 1978) (explaining different rule where allegation is that plea was based on misconduct or misrepresentation by defense counsel); *United States v. Valenciano,* 495 F.2d 585, 588 (3d Cir. 1974) (same). This rule has been reinforced with the advent of Guideline sentencing and the detailed procedures to be followed in conducting the Rule 11 colloquy at the guilty plea hearing. *See, e.g., United States v. Stephens*, 906 F.2d 251, 253 (6th Cir. 1990) ("The mere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement.... This is especially true under the new Sentencing Guidelines.") (quoting *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989) ("[The Sentencing Guidelines] reinforce our earlier decisions

9

> on the issue. Under the Guidelines there will be many more detailed hearings regarding imposition of sentence.")).
>
> The rationale is that the Rule 11 colloquy, which advises the defendant of the minimum and maximum imprisonment range under the statute and provides other necessary information about the Guidelines sentencing process, eliminates any arguable prejudice from an earlier estimate by counsel. *See, e.g., United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999) ("[A]n attorney's mere inaccurate prediction of sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim.") (citation omitted); *Gonzalez v. United States,* 33 F.3d 1047, 1051-53 (9th Cir. 1994) ( "The district court informed [defendant] of the maximum possible sentences and fines for the offenses to which he pleaded guilty. He responded affirmatively when asked if he was satisfied with [counsel]'s representation of him. As a result, [he] cannot claim he was prejudiced by [counsel]'s alleged gross error in calculating the sentencing guidelines range and likely sentence."); *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990) ("[Defendant]'s attorney's inaccurate prediction of what sentence [he] would receive upon pleading guilty does not rise to the level of a gross mischaracterization of the likely outcome of his case, and thus does not constitute ineffective assistance of counsel.... Further, [defendant] suffered no prejudice from his attorney's prediction because, prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court.") (citation omitted).

*Brown v. United States*, 75 F.Supp.2d 345, 355 (D. New Jersey 1999).

Petitioner also complains that he was released by police in 2003 and thereafter not arrested on the charges at issue until 2007. *See Petition*. However, this issue was discussed at petitioner's sentencing hearing, *see Sentencing Transcript*, at 7,[3] and does not reflect either

---

[3] Petitioner denied leaving Ohio in 2003 to avoid arrest. *Sentencing Transcript*, at 9.

that petitioner is innocent of the charge or that his counsel was ineffective in this regard. As noted in the *PreSentence Investigation Report*, as well as petitioner's *Sentencing Memorandum*, Doc. No. 163, petitioner admitted that he helped unload and transport nearly 20 kilograms of cocaine, although he denied recruiting his son-in-law, Jesus Ortiz, into the drug conspiracy; he also indicated that he was not initially aware that he was transporting drugs. *See id.* He plainly admitted his guilt to the charge to which he pleaded guilty:

> COURT: Mr. Sanchez, I understand there may be an issue regarding your relationship to your son-in-law in this offense. Leaving that aside, is there any part of the statement given regarding your conduct that you contend is incorrect?
>
> DEFENDANT: No, it's correct.
>
> COURT: Are you offering to plead guilty to conspiracy to distribute more than 5 kilograms of cocaine because you did in fact commit that offense?
>
> DEFENDANT: Yes, sir.

*Guilty Plea Transcript*, at 18. Further, it does not appear from the record that the government would have been unable to prove the charge against petitioner. Pursuant to the terms of petitioner's plea agreement, the government dismissed Count 2 of the Indictment, thereby reducing petitioner's potential prison exposure. He also obtained a two level reduction in his recommended sentence for acceptance of responsibility, and a one level reduction for timely notifying the authorities of his intention to plead guilty. *PreSentence Investigation Report*, and ¶¶51-52. His attorney also successfully argued that petitioner qualified for a reduction of sentence under 18 U.S.C. §3553(f)(1) - (5), which resulted in a sentence of 100 months imprisonment, rather than the mandatory 120 month

minimum term of incarceration.

Petitioner has simply failed to establish that his guilty plea was not knowing, intelligent and voluntary or that -- but for the inadequate performance of his attorney -- he would not have entered a guilty plea but would have instead proceeded to trial. *See Hill v. Lockhart, supra.* Likewise, nothing in the record supports petitioner's claim that he was convicted in violation of his privilege against self incrimination or by evidence that was illegally obtained.

Claims one through four are without merit.

Petitioner has also filed a *Motion for Mitigating Factors*, Doc. No. 173, in which he appears to request that the Court reduce his sentence to 70 months imprisonment. To the extent that petitioner alleges a misapplication of the United States Sentencing Guidelines, that claim should have been raised on appeal, but was not. Therefore, before this Court can consider such a claim in these proceedings, petitioner must establish cause and actual prejudice. *See United States v. Frady*, 456 U.S. 152, 167-68 (1982). He has failed to do so.

Moreover, this request for a sentence reduction does not raise a claim of constitutional dimension and is not supported by the record. Section 2255 authorizes relief where the sentence was imposed in violation of the Constitution or laws of the United States, or because the court lacked jurisdiction to impose the sentence, or because the sentence exceeded the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. §2255(a).

> To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude

> which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). To prevail on a §2255 motion alleging non-constitutional error, the petitioner must establish a " 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir.1990) (citing *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)).

*Watson v. United States,* 165 F.3d 486 (6th Cir.1999); see also *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.1996). Petitioner has failed to meet this standard here.

Therefore, the Magistrate Judge **RECOMMENDS** that petitioner's *Motion for Mitigating Factors* be **DENIED** and that this action be **DISMISSED**.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matt er to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the

decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

If any party intends to file an appeal of an adverse decision, they may address, in connection with any objections filed, whether a certificate of appealability should issue.


March 1, 2010                                         <u>  s/Norah McCann King          </u>
                                                      Norah McCann King
                                                      United States Magistrate Judge